IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| GREGORY CARCHIDI, on his own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JAL EQUITY CORP., MARKETING.COM, LLC,<br><br>Defendants. | Case No. |

CLASS ACTION COMPLAINT

Plaintiff Gregory Carchidi, on his own behalf and on behalf of others similarly situated, on information and belief except as to his own experiences and matters of public record, complains of Defendants JAL Equity Corp. ("JAL Equity") and Marketing.com, LLC, ("Marketing.com"), as follows:

INTRODUCTION

1. This case arises under the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101–2109 ("WARN Act"), and the Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. §§ 260.01–260.45 ("Wage Payment Law").

2. Defendants jointly operated, and jointly employed the workforce of, a facility known as Knepper Press, located at 2251 Sweeney Dr., Clinton, PA 15026, ("the Clinton Facility") where Plaintiff was employed.

3. On or around February 17, 2026, Defendants terminated the employment of approximately 60 full-time employees at the Clinton Facility, including Plaintiff, as part of a plant closing or mass layoff that will result in the Clinton Facility's permanent closure.

1

4. Defendants provided no notice to affected employees at the Clinton Facility, including Plaintiff, of this plant closing or mass layoff, in violation of the WARN Act.

5. Moreover, Defendants have failed to pay wages due and payable to the employees at the Clinton Facility, including Plaintiff, it separated from its payroll on or around February 17, 2026, in violation of the Wage Payment Law.

6. Plaintiff brings this action on his own behalf and on behalf of similarly situated former employees of Defendants to remedy Defendants' violations of the WARN Act and the Wage Payment Law.

## JURISDICTION AND VENUE

7. The Court has subject-matter jurisdiction of this case under 28 U.S.C. § 1331 and § 1367(a) because Plaintiff's WARN Act claim arises under federal law and Plaintiff's Wage Payment Law claim arises from the same transaction or occurrence as his WARN Act claim.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

9. Plaintiff Gregory Carchidi is a resident of New Kingstown, Pennsylvania.

10. Defendant JAL Equity Corp. is a corporation incorporated in Nevada with its principal place of business at 17209 Chesterfield Airport Rd., Ste. 292, Chesterfield, MO 63005.

11. Defendant Marketing.com, LLC, is a limited liability company formed under the laws of Missouri with its principal place of business at 101 Workman Ct., Eureka, MO 63025.

## FACTUAL ALLEGATIONS

12. Marketing.com provides digital and physical marketing services.

13. JAL Equity is a private equity firm in the business of acquiring, consolidating, and operating small and mid-size marketing companies.

14. In 2023, Marketing.com, a wholly owned subsidiary of JAL Equity, acquired Knepper Press Corp., an independent commercial printing company.

15. With the acquisition of Knepper Press Corp., Marketing.com and JAL Equity acquired the Clinton Facility.

16. After its acquisition, JAL Equity and Marketing.com jointly operated, and jointly employed the workforce of, the Clinton Facility.

17. Until approximately January 2026, employees at the Clinton Facility were paid by JAL Equity.

18. For the next month, until the mass layoff or plant closing on or around February 17, 2026, Clinton Facility employees were paid by Marketing.com.

19. Plaintiff was hired by Knepper Press Corp. in 2015 as an IT specialist, in which role he remained until Defendants terminated his employment.

20. Until the end of 2019, Plaintiff worked at the Clinton Facility in person.

21. Beginning in December 2019, Plaintiff began working remotely, while continuing to report to the Clinton Facility and going into the office as needed.

22. On or around February 17, 2026, Defendants terminated the employment of approximately 60 full-time employees at the Clinton Facility, including Plaintiff.

23. Affected employees, including Plaintiff, received no prior notice of these layoffs.

24. On or around February 17, 2026, affected employees, including Plaintiff, received a letter, dated February 17, 2026, addressed to "JAL Equity/Marketing.com Knepper Employee[s]," informing them that their employment "with JAL Equity/Marketing.com/Knepper will be terminated effectively immediately on 2/17/2026 due to the closure of Knepper location [*sic*]."

25. The letter represented that affected employees would be sent 2026 W-2 forms in 2027 by "JAL Equity/TRION."

26. The letter advised that, "[i]f JAL Equity is in possession of your personal property" and the property could not be collected "at the time of departure," employees were to contact "us," that is, "JAL Equity/Marketing.com/Knepper."

27. The letter was signed by a human resources employee with a Marketing.com email address and featured the logos of several JAL Equity companies, as well as JAL Equity itself.

28. Defendants intend to maintain a skeleton crew at the Clinton Facility to facilitate its permanent closure in March 2026, at which time any remaining employees will be laid off.

29. Defendants neither offered nor paid Plaintiff any severance payments before terminating his employment.

30. The WARN Act required Defendants to give their employees at the Clinton Facility, including Plaintiff, at least 60 days' notice of the February 17, 2026, layoffs.

31. Defendants gave their employees at the Clinton Facility, including Plaintiff, no prior notice of the February 17, 2026, layoffs.

32. Defendants' no-notice violation of the WARN Act was willful and without reasonable grounds for believing that the WARN Act was not violated.

33. Before the February 17, 2026, layoffs at the Clinton Facility, employees were paid every two weeks.

34. Employees at the Clinton Facility who were separated from Defendants' payroll on or around February 17, 2026, including Plaintiff, have not been paid wages earned since the end of January 2026.

35. The Wage Payment Law provided that the wages of all affected employees, including Plaintiff, became due and payable on the next regular payday.

36. Defendants' continuing failure to pay wages due to affected employees at the Clinton Facility, including Plaintiff, violated and continues to violate the Wage Payment Law.

## CLASS ALLEGATIONS

37. Plaintiff brings this action under Federal Rule of Civil Procedure 23 on behalf of a putative class similarly situated former employees of Defendants ("the Class"), defined as follows:

> All former employees of Defendants whose employment at the Clinton Facility was terminated by Defendants as part of a plant closing or mass layoff within 90 days of February 17, 2026.

38. The Class is so numerous that joinder of all members is impracticable because it contains approximately 60 to 70 members.

39. There are questions of law or fact common to the Class, including whether the WARN Act required Defendants to give Plaintiff and other Class members 60 days' notice of the February 17, 2026, plant closing or mass layoff at the Clinton Facility; whether Defendants failed to give the required notice; whether the Wage Payment Law required Defendants to pay Plaintiff's and other Class members' wages after the February 17, 2026, plant closing or mass layoff at the Clinton Facility; and whether Defendants failed to pay wages due and payable to Plaintiffs and other Class Members.

40. Plaintiff's claims are typical of the Class's because they arise from the same conduct under the same statutes and seek the same relief, and Plaintiff has no interests antagonistic to other Class members.

41. Plaintiff will fairly and adequately protect the interests of the Class because Plaintiff shares the Class's interest in recovering the relief to which the WARN Act and the Wage Payment Law entitles them.

42. The questions of law or fact common to the Class predominate over any questions affecting only individual members because only the amount of Plaintiff's and Class member's damages requires individualized inquiry.

43. A class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and Class members' claims because Defendants' liability to Plaintiff and Class members will be proved by the same evidence under the same statutes and because individual Class members have no or minimal interest in controlling the prosecution of separate actions.

## COUNT I
## Violation of 42 U.S.C. § 2102

44. Plaintiff incorporates and realleges paragraphs 1–36 above.

45. Defendants were "employers" within the meaning of the WARN Act because they employed at least 100 full-time employees or at least 100 employees who in the aggregate worked at least 4,000 hours per week.

46. The February 17, 2026, layoffs at the Clinton Facility constituted a "plant closing" or "mass layoff" within the meaning of the WARN Act because, aggregating all layoffs within 90 days of February 17, 2026, they resulted either in the temporary or permanent shutdown of the Clinton Facility and the termination of at least 50 full-time employees' employment there, or in the termination of the employment of at least 33 percent of employees at the Clinton Facility and of at least 50 employees.

47. Plaintiff was an "affected employee" within the meaning of the WARN Act because he may have reasonably been expected to experience employment loss as a consequence of the February 17, 2026, layoffs at the Clinton Facility.

48. Defendants were required to but did not give Plaintiff 60 days' written notice of the February 17, 2026, layoffs at the Clinton Facility.

49. Defendants failed to give as much notice of the February 17, 2026, layoffs at the Clinton Facility as was practicable.

50. Defendants had no reasonable grounds for believing that giving affected employees no notice was not a violation of the WARN Act.

51. For Defendants' violation of the WARN Act, Plaintiff seeks damages amounting to back pay for each day of Defendant's violation plus benefits.

## COUNT II
### Violation of 43 Pa. Stat. § 260.5

52. Plaintiff incorporates and realleges paragraphs 1–36 above.

53. Defendants were "employers" within the meaning of the Wage Payment Law because they employed persons within the Commonwealth of Pennsylvania.

54. Defendants, having separated Plaintiff from their payroll on or about February 17, 2026, have failed, and continue to fail, to pay wages, as defined by the Wage Payment Law, earned by Plaintiff that became due and payable not later than the Defendants' next regular payday on which such wages would have otherwise been due and payable.

55. For Defendants' violation of the Wage Payment Law, Plaintiff seeks damages amounting to unpaid wages plus liquidated damages.

## PRAYER FOR RELIEF

56. Plaintiff asks that the Court

a. Certify this action as a class action; appoint Plaintiff as class representative; and appoint Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

b. Enter a judgment in Plaintiff's and the Class's favor awarding them the full damages to which the WARN Act and the Wage Payment Law entitle them;

c. Award Plaintiff the costs of this action, including attorneys' fees, as allowed by law; and

57. Order such further relief as the Court finds just and proper.

## JURY DEMAND

58. Plaintiff demands a trial by jury on all issues so triable.

DATE: March 4, 2026

Respectfully submitted,

/s/ Larry Bendesky
Larry Bendesky (LEB5134)
Patrick Howard* (PA ID #88572)
SALTZ, MONGELUZZI, & BENDESKY, P.C
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Tel: (215) 496-8282
Fax: (215) 496-0999
lbendesky@smbb.com
phoward@smbb.com

Lynn A. Toops*
Ian R. Bensberg*
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
ibensberg@cohenmalad.com

*Attorneys for Plaintiff*
*Application for admission *pro hac vice* forthcoming